

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **RANDALL LEE HALER** | § | Case No. 10-42052 |
| xxx-xx-3747 | § | |
| 751 Majestic Oaks, Oak Point, TX  75068 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| BOYINGTON CAPITAL GROUP, LLC | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 10-4217 |
| | § | |
| RANDALL LEE HALER | § | |
| | § | |
| Defendant | § | |

## <u>MEMORANDUM OF DECISION</u>[1]

ON THIS DATE the Court considered the Motion for Partial Summary Judgment

(the "Motion") filed by the Plaintiff, Boyington Capital Group, LLC ("Plaintiff") in the

above referenced adversary proceeding.  Plaintiff filed its "Complaint to Determine the

Dischargeability of Debtor Randall Lee Haler" on September 21, 2010,[2] seeking to have

the debt owed to it by the Debtor-Defendant, Randall Haler ("Haler," "Defendant," or

"Debtor"), declared nondischargeable under alternative theories presented by 11 U.S.C.

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] Adversary Case No. 10-4217, dkt. #1.  This proceeding was abated for 49 months in order to allow the parties to secure a final adjudication of their dispute through the state court system.

§§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6).[3]

Upon due consideration of the pleadings and the proper summary judgment evidence submitted by the parties, and the relevant legal authorities, the Court concludes that the Plaintiff's Motion should be granted in part and that judgment as a matter of law should be granted for the Plaintiff on its claim under § 523(a)(2)(A) and that a particular component of the state court indebtedness should be declared nondischargeable as a debt obtained by the false representations of the Defendant.[4]

### Factual and Procedural Background[5]

In March 2006, Greg Morse ("Morse") on behalf of the Plaintiff, contacted McKinney Aerospace, L.P. ("MALP") to inquire whether it was capable of performing work on the Plaintiff's Hawker BH-125-600A business jet.  Morse communicated and negotiated with the Debtor-Defendant Haler, who served as the Executive Vice President of MALP, as well as with Andrew Eros with Aeros Aviation, LLC.  Aeros Aviation served as the general partner of MALP and Haler and Eros, individually, were limited

---

[3]  The debt in question became final following the entry of an Amended Final Judgment issued by the 429th Judicial District Court in and for Collin County, Texas on June 9, 2015.  *See* Plaintiff's Ex. 9.

[4]  This Court has authority to enter final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

[5]  The facts presented are those the Court believes to be uncontested between the parties or are imposed by applicable provisions of claim preclusion.  They are presented only as a general factual background to the legal claims asserted in the case.  This section is not intended to resolve any disputed or contested facts.

partners of MALP.[6]

After Morse spent significant time with Haler and Eros, the Plaintiff entered into a series of four contracts whereby MALP would repair and restore the Plaintiff's jet.  Each contract dealt with a specific portion of the aircraft — (1) an engine renovation contract;[7] (2) an interior refurbishment contract;[8] (3) a new Terrain Awareness and Warning System (TAWS);[9] and (4) a new Reduced Vertical Separation Minimum (RVSM) system.[10]  Each contract was executed by Dean Murray, Vice-President of Sales, on behalf of MALP and by Morse on behalf of the Plaintiff.[11]  In early April 2006, the Plaintiff tendered its first payment of $337,205.00 to MALP.[12]  Following delivery of the jet for repair, the parties agreed upon a subsequent change order, and the Plaintiff tendered an additional $60,000 to MALP on June 6, 2006.  Later the same day, however, the Plaintiff sent a letter to MALP, instructing it to forego any further work on the jet and the Plaintiff requested a "refund [of] all monies paid but not yet spent, including all avionics and hardware

---

[6]  Haler testified at trial that Aeros Aviation was the general partner of MALP and owned one percent of the company, he was a limited partner and owned 49.5% of MALP, and Eros owned the remaining 49.5% of the company and was "the majority of the company vote."  Defendant's Ex. 3 at 11-13.

[7]  Plaintiff's Ex. 5 (Part 2) [Trial Court Exhibits] at 25-29.

[8]  *Id.* at 1-14.

[9]  *Id.* at 15-19.

[10]  *Id.* at 20-24.

[11]  *Id.* at 5, 19, 24 and 29.  Morse executed each contract on March 31, 2006.

[12]  The combined quotes for the four contracts totaled $476,550.

purchased but not yet installed."[13]  In response, Haler created a chart for the Plaintiff which listed the amounts deposited by the Plaintiff for each contract and the amounts remaining due.  The available cash to be returned was $258,021.73.[14]  Later that month, MALP reduced that amount to $158,000, and "proposed a pay-out schedule."[15]  At no time, however, did MALP actually refund any money to the Plaintiff.

Having not received its refund, the Plaintiff sued MALP, Haler, Aeros Aviation, Eros, and other parties in the 429th Judicial District Court of Collin County, Texas on July 6, 2006 (the "State Court Litigation").[16]  Soon after, MALP shut down its operations and began a self-directed liquidation.  The state district court subsequently appointed a receiver for MALP on September 20, 2006, and the receiver reported that MALP had previously terminated its employees at the end of July 2006, and had sold its operating equipment before August 15, 2006.[17]

The State Court Litigation was tried to a jury and the jury issued factual findings pursuant to the charge in favor of the Plaintiff.[18]  The jury findings, in relevant part, are as follows:

---

[13]  *Id.* at 38.

[14]  *Id*. at 39-40.

[15]  Plaintiff's Ex. 6 at 4; Plaintiff's Ex. 5 (Part 2) [Trial Court Exhibits] at 41-49.

[16]  Plaintiff's Ex. 1 and 2. The state court case is listed as cause no. 429-02144-06, styled *Boyington Capital Group, LLC v. McKinney Aerospace, LP, et al.*

[17]  Plaintiff's Ex. 6 at 5.

[18]  Plaintiff's Ex. 4.

## QUESTION 4:

In answering the following questions, consider whether Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC used McKinney Aerospace, L.P. for the purpose of perpetuating and did perpetuate an actual fraud on Boyington Capital Group, LLC primarily for the direct personal benefit of Randall Haler, Andrew Eros, McKinney Aerospace, LP and/or Aeros Aviation, LLC.

Answer "Yes" or "No."

| | |
|---|---|
| Randall Haler | yes |
| Andrew Eros | yes |
| McKinney Aerospace, L.P. | yes |
| Aeros Aviation, LLC | yes |


## QUESTION 7:

Do you find from a preponderance of the evidence that Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC committed the offense of theft of property from Boyington Capital Group, LLC?

"Theft" is defined as follows:

The unlawful appropriation of property with intent to deprive the owner of same without the consent of the owner's effective consent (sic).

"Deprive" means to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner.

"Effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by deception or coercion.

"Appropriate" means to acquire or otherwise exercise control over property other than real property.

"Property" means a document, including money, that represents or embodies anything of value.

Answer "Yes" or "No."

| | |
|---|---|
| Randall Haler | yes |
| Andrew Eros | yes |
| McKinney Aerospace, L.P. | yes |
| Aeros Aviation, LLC | yes |

If you answered the question above "Yes," as to Randall Haler, then answer the following question. If you answered the question above "No," as to Randall Haler, do not answer the following and move to Question 8.

Please state in dollars and cents the damages, if any, sustained by Boyington Capital Group, LLC as [a] result of the conduct described in Question 7.

Answer:          $258,021.73

## QUESTION 8:

Do you find from a preponderance of the evidence that Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC converted property of Boyington Capital Group, LLC?

To constitute "Conversion," you must find that:

(a)     Boyington Capital Group, LLC owned, possessed or had the right to immediate possession of the funds it deposited with McKinney Aerospace, LP;

(b)     The Deposits[19] were personal property (as opposed to real property);

(c)     Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC wrongfully exercised dominion or control over the Deposits; and

(d)     Boyington Capital Group, LLC suffered injury as a result of such conversion.

Answer "Yes" or "No."

| | |
|---|---|
| Randall Haler | yes |
| Andrew Eros | yes |
| McKinney Aerospace, L.P. | yes |
| Aeros Aviation, LLC | yes |

If you answered the question above "Yes," as to Randall Haler, then answer the following question. If you answered the question above "No," as to Randall Haler, do not answer the following and move to Question 9.

Please state in dollars and cents the damages, if any, sustained by Boyington Capital

---

[19] The term "Deposits" was defined in the jury charge as ". . .the payment by Boyington Capital Group, LLC to McKinney Aerospace, LP of $337,250 dated April 6, 2006 and the payment by Boyington Capital Group, LLC to McKinney Aerospace, LP of $60,000 dated June 6, 2006." Plaintiff's Ex. 4 at 3.

Group, LLC as [a] result of the conduct described in Question 8.

Answer:                $258,021.73


**QUESTION 9:**

Do you find from a preponderance of the evidence that Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC fraudulently induced Boyington Capital Group, LLC into entering into the contracts and making the Deposits?[20]

To constitute fraudulent inducement, you must find that:

(a)    Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC made a representation to Boyington Capital Group, LLC;

(b)    The representation was material;

(c)    The representation was false when made;

(d)    When Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC made the representation, Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC

          (i)     knew the representation was false; or
          (ii)    made the representation recklessly, as a positive assertion, and without knowledge of its truth;

(e)    Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC made the representation with the intent that Boyington Capital Group, LLC rely on it;

(f)    Boyington Capital Group, LLC did rely on it; and
(g)    The representation caused Boyington Capital Group, LLC to suffer an injury.

Answer "Yes" or "No."

| | |
|---|---|
| Randall Haler | yes |
| Andrew Eros | yes |
| McKinney Aerospace, L.P. | yes |
| Aeros Aviation, LLC | yes |

---

[20]  *Id.*

-7-

If you answered the question above "Yes," as to Randall Haler, then answer the following question.  If you answered the question above "No," as to Randall Haler, do not answer the following and move to Question 10.

Please state in dollars and cents the damages, if any, sustained by Boyington Capital Group, LLC as [a] result of the conduct described in Question 9.

Answer:              $258,021.73

**QUESTION 10:**

Did Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC violate the Texas Deceptive Trade Practices Act ("DTPA")?

To constitute a violation of the DTPA, you must find that:

(a)      Boyington Capital Group, LLC is a consumer;

(b)      Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC can be sued under the DTPA;

A plaintiff can bring an action against any person who uses or employs false, misleading or deceptive acts or practices;

A person is defined as an individual, partnership, corporation, association, or other group, however organized;

Agents and directors can be held liable if, by their own actions, they violate the DTPA;

(c-1)    Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC committed one or more of the following acts:

(i)      represented that goods or services had characteristics or benefits which they did not have;

(ii)     represented that goods or services were of a particular standard, quality or grade if they were of another;

(iii)    represented that goods or services were performed or parts replaced when they were not; or

(iv)     failing to disclose information concerning goods or services which was known at

the time of the transaction if such failure to disclose such information was intended to induce Boyington Capital Group, LLC into a transaction into which Boyington Capital Group, LLC would not have entered had the information been disclosed;

## OR

(c-2)   When Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC engaged in an unconscionable course of action;

Unconscionability is an act or practice that, to Boyington Capital Group, LLC's detriment, takes advantage of Boyington Capital Group, LLC's lack of knowledge, ability, experience or capacity to a grossly unfair degree;

(e)(sic)   Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC's actions were a producing cause of Boyington Capital Group, LLC's injuries;

Producing cause required that the act be both cause-in-fact and a substantial factor in causing plaintiff's injuries.

A producing cause is an efficient, exciting, or contributing cause that in the natural sequence of events produces injuries or damages.

To establish a producing cause, it is not necessary to show that the injury was foreseeable.

Answer "Yes" or "No."

| | |
|---|---|
| Randall Haler | yes |
| Andrew Eros | yes |
| McKinney Aerospace, L.P. | yes |
| Aeros Aviation, LLC | yes |

If you answered the question above "Yes," as to Randall Haler, then answer the following question.  If you answered the question above "No," as to Randall Haler, do not answer the following and move to Question 11.

Please state in dollars and cents the damages, if any, sustained by Boyington Capital Group, LLC as [a] result of the conduct described in Question 10.

Answer:          $258,021.73

**QUESTION 11:**

Was the conduct of Randall Haler described in Question 10 committed knowingly?

A person acts knowingly with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Answer "Yes" or "No."

Randall Haler                            <u>yes</u>

If you answered the question above "Yes," as to Randall Haler, then answer the following question. If you answered the question above "No," as to Randall Haler, do not answer the following and move to Question 12.

What sum of money, if any, in addition to actual damages, should be awarded to Boyington Capital Group, LLC as a result of Randall Haler's conduct being committed knowingly?

Answer in dollars and cents, if any.

Answer:                      $ <u> -0-  </u>

**QUESTION 12:**

Do you find from a preponderance of the evidence that Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC committed fraud by non-disclosure as to Boyington Capital Group, LLC?

To constitute fraud by non-disclosure, you must find that:

(a)     Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC concealed from or failed to disclose certain facts to Boyington Capital Group, LLC;

(b)     The facts were material;

(c)     Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC knew that:

        i.      Boyington Capital Group, LLC was ignorant of the facts; and

ii.     Boyington Capital Group, LLC did not have an equal opportunity to discover the facts;

(d)     When Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC were deliberately silent when Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC had a duty to speak;

(e)     By failing to disclose the facts, Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC intended to induce Boyington Capital Group, LLC to take some action or refrain from acting;

(f)     Boyington Capital Group, LLC relied on Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC's non-disclosure; and

(g)     Boyington Capital Group, LLC was injured as a result of acting without the knowledge of the undisclosed facts.

Answer "Yes" or "No."

| | |
|---|---|
| Randall Haler | yes |
| Andrew Eros | yes |
| McKinney Aerospace, L.P. | yes |
| Aeros Aviation, LLC | yes |

If you answered the question above "Yes," as to Randall Haler, then answer the following question.  If you answered the question above "No," as to Randall Haler, do not answer the following and move to Question 13.

Please state in dollars and cents the damages, if any, sustained by Boyington Capital Group, LLC as [a] result of the conduct described in Question 12.

Answer:          $258,021.73

• • •

**QUESTION 15**:
Was Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC part of a conspiracy to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means that caused damage to Boyington Capital Group, LLC?

A civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.  To be part of a conspiracy, Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation,

LLC, and another person or persons must have had knowledge of, agreed to, and intended an unlawful common objective or course of action that resulted in the damages to Boyington Capital Group, LLC.  One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy.

Answer "Yes" or "No."

| | |
|---|---|
| Randall Haler | yes |
| Andrew Eros | yes |
| McKinney Aerospace, L.P. | yes |
| Aeros Aviation, LLC | yes |

If you answered the question above "Yes," as to Randall Haler, then answer the following question.  If you answered the question above "No," as to Randall Haler, do not answer the following and move to Question 16.

Please state in dollars and cents the damages, if any, sustained by Boyington Capital Group, LLC as [a] result of the conduct described in Question 15.

Answer:          $258,021.73

After the rendition of the jury verdict in the State Court Litigation but before a judgment could be rendered thereon, Haler filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court on June 24, 2010.[21]  The Plaintiff, Boyington Capital Group, LLC, timely filed this adversary proceeding on September 21, 2010, and upon its motion, this Court modified the discharge injunction permitting the parties to complete the State Court Litigation, including the entry of a final judgment and any appeal therefrom.[22]  The state district court signed a final judgment on December 6,

---

[21]  Case no. 10-42052, dkt. #1.

[22]  Dkt. #35.

2011.[23]  Haler appealed.

On August 15, 2013, the Texas Court of Appeals for the Fifth District of Texas at Dallas issued an opinion under which much of the relief granted to the Plaintiff by the district court's final judgment was affirmed.[24]  The appellate court reversed and remanded only for a proper allocation and reconsideration of the award of attorneys' fees.[25]  Haler filed a petition for review with the Supreme Court of Texas on November 14, 2013, which was subsequently denied on January 17, 2014.[26]  The Court of Appeals issued its mandate on February 28, 2014.[27]  Upon remand and reconsideration of the attorneys' fees issue as directed by the appellate court, the state district court signed an Amended Final Judgment on June 9, 2015.[28]

After the amended state court judgment became final and nonappealable,[29] this Court dissolved its abatement on August 20, 2015,[30] and issued its Second Scheduling

---

[23]  Plaintiff's Ex. 1 at 22.

[24]  *See Haler v. Boyington Capital Group, Inc. (sic)*, 411 S.W.3d 631 (Tex.App. – Dallas 2013, pet. denied).

[25]  Plaintiff's Ex. 6.

[26]  Plaintiff's Ex. 7.

[27]  Plaintiff's Ex. 8.

[28]  Plaintiff's Ex. 9.

[29]  See status report filed by the Plaintiff on July 10, 2015.  Dkt. #57.

[30]  Dkt. #58.

Order Arising from Management Conference on September 14, 2015.[31]  On December 1,

2015, the Plaintiff filed its Motion for Partial Summary Judgment, seeking a

determination of nondischargeability against Haler under 11 U.S.C. §§523(a)(2)(A) and

(a)(4) through the application of the principles of collateral estoppel.[32]  The Defendant

filed an amended response in opposition to the motion on January 8, 2016[33] and the

Plaintiff filed a reply on January 22, 2016.[34]


## Discussion

*Standards for Summary Judgment*

The Plaintiff brings its Motion for Partial Summary Judgment in this adversary

proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.  That rule

incorporates Federal Rule of Civil Procedure 56, which provides that summary judgment

shall be rendered "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of

law."[35]  The party seeking summary judgment always bears the initial responsibility of

---

[31]  Dkt. #59.

[32]  Dkt. #64.

[33]  Dkt. #71.

[34]  Dkt. #72.

[35]  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), *quoting* FED. R. CIV. P. 56(c).

informing the court of the basis for its motion, identifying those portions of the

"pleadings, depositions, answers to interrogatories, and affidavits, if any," which it

believes demonstrates the absence of a genuine issue of material fact.[36]  The moving party

asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c).

The manner in which the necessary summary judgment showing can be made

depends upon which party will bear the burden of persuasion at trial.  If, as in this case,

the burden of persuasion is on the moving party, "that party must support its motion with

credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it

to a directed verdict if not controverted at trial."[37]

If a summary judgment motion is properly supported, a party opposing the motion

may not merely rest upon the contents of its pleadings, but rather must demonstrate in

specific responsive pleadings the existence of specific facts constituting a genuine issue

---

[36] *Id.* at 323.

[37] *Id.* at 331.

-15-

of material fact for which a trial is necessary.[38]  The substantive law will identify which

facts are material.[39]  In its objection, the non-movant must show more than a "mere

disagreement" between the parties,[40] or that there is merely "some metaphysical doubt as

to the material facts."[41]  Neither are unsubstantiated, conclusory assertions in the response

sufficient to raise a genuine issue of material fact.[42]  However, "[t]he issue of material fact

which must be present in order to entitle a party to proceed to trial is not required to be

resolved conclusively in favor of the party asserting its existence;  rather, all that is

required is that sufficient evidence supporting the claimed factual dispute be shown to

require a jury or judge to resolve the parties' differing versions of the truth at trial."[43]

Ｔhe record presented is reviewed in the light most favorable to the non-moving

party.[44]  "Where the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party, there is no 'genuine issue for trial.'"[45]  Further, "[o]nly disputes

---

[38]  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986), *citing* FED. R. CIV. P. 56(e).

[39]  *Id.*

[40]  *Calpetco 1981 v. Marshall Exploration, Inc.,* 989 F.2d 1408, 1413 (5th Cir. 1993).

[41]  *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[42]  *Jacobs v. City of Port Neches,* 7 F.Supp.2d 829, 833 (E.D. Tex. 1998) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[43]  *Anderson*, 477 U.S. at 248-49.

[44]  *Matsushita,* 475 U.S. at 587.

[45]  *Id.* at 587, *citing First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968).

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[46]

In addition to the Rule 56 procedures outlined above, the requirements of Local District Court Rule CV-56 were also invoked by the Court for the content and determination of summary judgment motions.[47] That rule, in relevant part, directs a movant to include a Statement of Undisputed Material Facts and to support such a statement with "appropriate citations to proper summary judgment evidence."[48] It directs a respondent that any response "should be supported by appropriate citations to proper summary judgment evidence."[49] With regard to the disposition of the motion, the rule states:

> (c) **Ruling**. In resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, *except to the extent* that such facts are controverted in the response filed in opposition to the motion, as supported by proper summary judgment evidence. The court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment.[50]

---

[46] *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

[47] *See "Second Scheduling Order Arising from Management Conference Conducted After Termination of Abatement"* entered in this case on September 14, 2015 [dkt #59], *citing and attaching* E.D. TEX. LOCAL R. CV–56.

[48] "The phrase 'appropriate citations' means that any excerpted evidentiary materials that are attached to the motion or the response should be referred to by page and, if possible, by line." *Broussard v. Oryx Energy Co.*, 110 F.Supp.2d 532, 536 (E.D. Tex. 2000) (*citing* E. D. Tex. Local R. CV-56(d)).

[49] E.D. TEX. LOCAL R. CV–56(b).

[50] E.D. TEX. LOCAL R. CV–56(c) (emphasis added).

In this case, the Plaintiff bears the ultimate burden as to the nondischargeability of the debt. Therefore, the Plaintiff is entitled to a summary judgment only if there exists no genuine issue of material fact as to each essential element under the nondischargeability theories that are pled. The Plaintiff asserts that the principles of issue preclusion (collateral estoppel) resulting from the entry of the Amended Final Judgment in the state court provide the factual foundation necessary to support a finding of nondischargeability. In order to properly assess this claim, the Court must first determine the applicability of the doctrine itself. If collateral estoppel applies, then any appropriate factual findings of the presiding state court should not be disturbed here, and the Court will apply those findings to the nondischargeability elements. To the extent that an actual controversy does exist over a disputed fact, the finder of fact resolves any doubts and draws all reasonable inferences in favor of the nonmoving party.[51]

*Collateral Estoppel*

"Collateral Estoppel, or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'"[52] In other words, "once an issue is actually and necessarily determined by a court of

---

[51] *U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 465 (5th Cir. 2009).

[52] *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (internal quotations omitted).

competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."[53]  "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."[54]

In the bankruptcy dischargeability context, "parties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability" and satisfy the elements thereof.[55]  In other words, when an issue that forms the basis for the creditor's theory of nondischargeability has been actually litigated in a prior proceeding, neither the creditor nor the debtor may relitigate those grounds.[56]  While the doctrine of issue preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable.[57]

The inquiry into the preclusive effect of a state court judgment is guided, indeed mandated, by the full faith and credit statute, which states that "judicial proceedings . . .

---

[53] *Montana v. U.S.*, 440 U.S. 147, 153 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)).

[54] *Id*. at 153–54.

[55] *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (quotation marks omitted).

[56] *RecoverEdge, L.P. v. Pentecost*, 44 F.3d 1284, 1294 (5th Cir. 1995).

[57] *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."[58] Thus, federal courts look to the principles of issue preclusion utilized by the forum state in which the prior judgment was entered.[59] Because the judgment against the Defendant was entered in a Texas state court, this Court applies the Texas law of issue preclusion.[60]

Collateral estoppel under Texas law prevents the relitigation of identical issues of law or fact that were actually litigated and were essential to the final judgment in a prior suit.[61] "The doctrine applies when the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit."[62] Specifically, a party is collaterally estopped from raising an issue under Texas law when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case.[63] Once an actually litigated and essential issue is determined, that issue is

---

[58]  28 U.S.C. § 1738 (1994).

[59]  *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997).

[60]  *Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996).

[61]  *Texas Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001).

[62]  *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1991) (citing *Tarter v. Metropolitan Sav. & Loan Ass'n*, 744 S.W. 926, 927 (Tex. 1988)).

[63]  *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984); *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 817 (Tex.App.-Dallas 2012, no pet.).

conclusive in a subsequent action between the same parties.[64]

In the context of issue preclusion, "issue" and "fact" are interchangeable.  The purpose of the reviewing court is to determine the specific facts that have already been established through full and fair litigation.  As stated in the Fifth Circuit decision in *Fielder v. King (Matter of King)*, 103 F.3d 17, 19 (5th Cir. 1997):

> In this circuit, issue preclusion will prevent a bankruptcy court from determining dischargeability issues for itself only if "the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question . . . and the facts supporting the court's findings are discernible from that court's record," citing *Dennis v. Dennis (Matter of Dennis)*, 25 F.3d 274, 278 (5th Cir. 1994) ["Collateral estoppel applies in bankruptcy courts only if, inter alia, the first court has made . . . factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same prima facie elements as the bankruptcy issue."]

Though the specificity of findings derived from state court trials often varies depending upon whether a trial by jury or a bench trial occurred, factual findings need not be explicitly stated as such nor separately denominated under Texas law in order for collateral estoppel principles to apply.  In other words, Texas collateral estoppel principles may be properly applied "with realism and rationality" through an examination of the state court proceeding to discern the subsidiary facts "necessarily decided" to reach a judgment in the first proceeding[65] and such facts which prove to be germane to a

---

[64]  *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985).

[65]  *See, e.g.*, *Fort Worth Hotel, L.P. v. Enserch Corp.*, 977 S.W.2d 746, 753–54 (Tex. App.–Fort Worth 2003, no pet.) [collateral estoppel properly applied to establish negligence of defendant even

determination of nondischargeability under the Bankruptcy Code may not be relitigated in a dischargeability trial.  As the party asserting the preclusive effect of the findings arising from the State Court Litigation, the Plaintiff has the burden of proof on all elements of collateral estoppel.

Addressing the relevant factors in reverse order, the summary judgment record clearly demonstrates that these two parties were adversaries in the state court litigation. Indeed, this Court modified the discharge injunction in order to allow these parties to proceed in state court.[66]  The summary judgment record further evidences that the factual determinations tendered in the State Court Litigation were essential to the entry of the Amended Final Judgment against the Defendant in that state court proceeding and a certain number of those are germane to the determination of the nondischargeable nature of that judgment debt under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4).  The Amended Final Judgment, and the jury findings upon which it is based, establish several facts which undergird the liability of the Defendant to the Plaintiff for causes of action ranging from theft, to fraudulent inducement, and to fraud by non-disclosure.  Such facts arose from an actual evidentiary trial and the Defendant acknowledges that he participated in each stage of the state court proceeding and that a final judgment was entered against him in favor of the Plaintiff.   As a result, the facts established in the State Court Litigation were fully and

---

though factfinder did not make any specific finding that a particular act or omission caused an explosion].

[66]  Dkt. #35.

fairly litigated by the parties in the state court system. Thus, all three requirements for the application of collateral estoppel under Texas law are established in this case and the Defendant is thereby estopped from relitigating those determinations that necessarily support the Amended Final Judgment.

However, notwithstanding the application of collateral estoppel principles, the question remains as to whether the findings referenced or necessarily implied by the entry of the Amended Final Judgment are sufficient to render a judgment as a matter of law that the debt evidenced by the Amended Final Judgment is nondischargeable either as a debt arising from false representation under § 523(a)(2)(A) or as a debt arising from embezzlement under § 523(a)(4).

The Debtor-Defendant contends that collateral estoppel principles cannot be properly applied under these circumstances because:  (1) the trial court employed a "broad form jury charge," that generically precludes the application of collateral estoppel; (2) the broad-form jury charge precludes any identification of the precise misrepresentation upon which the jury assessed damages; and (3) any statement of the Defendant regarding the financial ability of MALP to handle the proposed repair contracts was an oral statement regarding financial condition which is otherwise dischargeable under §523(a)(2)(A).

The "broad-form" jury submissions utilized in the State Court Litigation are mandated by Rule 277 of the Texas Rules of Civil Procedure.  Rule 277 requires that

-23-

"[I]n all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions."[67]  In discarding the former rule which required submission of each issue "distinctly and separately," the Texas Supreme Court confirmed that "Rule 277 mandates broad form submissions . . . in any or every instance in which it is capable of being accomplished" and that it had "eliminated trial court discretion to submit separate questions with respect to each element of a case."[68]  Such a mandate was imposed "to eliminate many ill effects of the former special-issues practice, under which appeals proliferated because of inevitable conflicts in jury answers."[69]  "The rule further expedited trial by simplifying the charge conference and making questions easier for the jury to comprehend and answer."[70]

     While acknowledging the compulsory nature of this jury question format, the Defendant contends that the mandated "broad-form" submission precludes the application of collateral estoppel principles.  Such a contention is not supported by Texas law nor does the Defendant cite any such authority.  As one Texas Court of Appeals observed in rejecting the contention that collateral estoppel could not arise in a negligence case in which the mandated broad-form jury submission was utilized:

---

[67] TEX. R. CIV. P. 277.

[68] *Tex. Dept. of Human Svcs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990).

[69] *Harris Cty. v. Smith*, 96 S.W.3d 230, 239 (Tex. 2002) (O'Neill, J., dissenting).

[70] *Id*. at 239-40.

> [Appellant] contends collateral estoppel should not have been applied
> because the . . . jury did not make any specific finding that a particular act
> or omission was negligent and a proximate cause of the explosion.
> However, it is undisputed that the . . . jury found that the [Appellant]'s
> negligence proximately caused the explosion.  Under our system of broad
> form submission of issues, it was not necessary for the trial court . . . to
> submit individual questions on the various allegations of negligence in
> order to obtain the verdict. . . .   Fort Worth Hilton cites no case law for the
> proposition that a general finding of negligence should preclude the
> application of collateral estoppel.  Nor do we believe the policies behind
> collateral estoppel would be served by narrowing the doctrine.  Judicial
> efficiency would suffer if all negligence cases decided under broad form
> submission were denied collateral estoppel effect.[71]

Thus, as a general proposition, the mandated use of broad-form jury submissions does not

preclude the application of Texas collateral estoppel principles.

Even though application of collateral estoppel is not precluded by the use of a

broad-form jury submission, the Defendant further contends that its use precludes the

precise identification of the false representation upon which the jury assessed liability.

Specifically, the Defendant contends that a determination of nondischargeability under

§523(a)(2)(A) is precluded "because the jury could have relied on Mr. Haler's statement

concerning the financial condition of the companies."[72]  Thus, according to the

---

[71] *Fort Worth Hotel Ltd. P'ship v. Enserch Corp.*, 977 S.W.2d 746, 753-54 (Tex. App. – Fort Worth 1998, no pet.).

[72] *Defendant's Amended Response to Plaintiff's Motion* at 11.

Defendant, the absence of a "special verdict form" at the jury trial prevents this Court from "ascertain[ing] whether the jury relied upon [the Defendant's] actionable conduct."[73] Setting aside for a moment the scope of the financial condition exclusion from §523(a)(2)(A), the summary judgment record presented to the Court otherwise contains no disputed facts regarding the representations made by the Defendant upon which liability was imposed.  Indeed, even the Defendant's response references the relevant representations which the Defendant made to the Plaintiff's representative prior to the formation of the contract.[74]  The first two representations attempted to establish the Defendant's position at MALP and the access to financial information afforded to him as a result of that position.[75]  The latter two representations regarding the financial stability of MALP and its access to cash were tendered to induce the Plaintiff to select MALP for

---

[73] *Defendant's Amended Response* at 10.

[74] At trial, the Plaintiff's representative, Mr. Morse, testified as follows:

> Mr. Haler expressed to us on a number of occasions, eye-to-eye, first person, that he owned half of McKinney Aerospace, two, that he controlled the money, that they were in very fine legally (sic) financial shape, four, that if we gave them the work, because I asked a number of very important questions, they had plenty of cash to operate their business during the term that they were working on our airplane.

> That's the synopsis of what we covered literally dozens of times over the weeks and months leading up to the date of the signing of the contract and the subsequent delivery of the airplane to Mr. Haler at McKinney Aerospace.

Plaintiff's Ex. 5 (Part 1) [Trial Court Transcript] at 47:10-22, as cited in *Defendant's Amended Response* at 11.

[75] *Id.*

-26-

the repair of its airplane and to tender the required financial deposits for such repairs.[76]

Thus, in its response to question 9 of the charge, the jury made the following specific

factual findings regarding each of the Defendant's representations regarding the financial

stability of MALP and its access to cash:

> (a)     each of the Defendant's representations was material;
>
> (b)     each of the Defendant's material representations was false when made;
>
> (c)     each of the Defendant's material representations was knowingly false or made recklessly as a positive assertion without his actual knowledge of its truth;
>
> (d)     each of the Defendant's material representations was made with the intent that the Plaintiff should rely on it;
>
> (e)     the Plaintiff did, in fact, rely upon each of the Defendant's material representations;
>
> (f)     the reliance of the Plaintiff upon each of the Defendant's material representations caused it to suffer an injury of $258,021.73.

Additionally, in response to question 12 of the charge regarding fraud by non-

disclosure,[77] the jury made the following specific factual findings regarding the failure of

---

[76] *Id.*

[77] Fraud may arise by nondisclosure when a party with a duty to disclose facts fails to do so. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex.1997); cited in *Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp.*, 369 F.Supp.2d 848, 858 (E.D. Tex. 2004). Such silence when there is a duty to speak may equate to a misrepresentation of material facts. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex.1986); *Ho v. UT Arlington*, 984 S.W.2d 672, 691 (Tex. App. – Amarillo 1998, pet. denied). A duty to speak may arise where: (1) there is a fiduciary relationship; (2) one voluntarily discloses partial information, but fails to disclose the whole truth; (3) one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue; or (4) one makes a partial disclosure and conveys a false impression. *Cronus*, 369 F.Supp.2d at 858, citing, *inter alia*,

the Defendant to communicate the true facts to the Plaintiff regarding the financial

stability of MALP and its access to cash:

(a)    the Defendant either concealed or otherwise failed to disclose those facts to the Plaintiff;

(b)    such facts which the Defendant failed to disclose were material to the transaction;

(c)    the Defendant knew that the Plaintiff was ignorant of the undisclosed material facts or did not have an equal opportunity to discover such facts;

(d)    the Defendant was deliberately silent when he had a duty to speak and to reveal the undisclosed material facts to the Plaintiff;

(e)    the Defendant intended to induce the Plaintiff to take some action or refrain from acting by failing to reveal the undisclosed material facts to the Plaintiff;

(f)    the Plaintiff relied upon the Defendant's non-disclosure of the undisclosed material facts;

(g)    the Plaintiff suffered damages in the amount of $258,021.73 as a result of acting without knowledge of the undisclosed material facts.

In each instance, the Defendant is now precluded from relitigating those established facts

under the principles of collateral estoppel and such resolved factual determinations are

indeed germane to the Plaintiff's §523(a)(2)(A) claim.

---

*Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App. – Houston [14th Dist.] 1997, pet. denied).  The failure to disclose a material fact when one has a duty to do so is sufficient to establish grounds for nondischargeability for fraud under § 523(a)(2)(A) of the Bankruptcy Code.  *Kleindienst v. Horne (In re Horne)*, 2011 WL 350473 at *7 (Bankr. W.D. Tex., Feb. 2, 2011)*; Int'l Beauty Products, L.L.C. v. Beveridge (In re Beveridge)*, 416 B.R. 552, 569–70 (Bankr. N.D. Tex. 2009); and cases cited therein.

*Nondischargeability Under 523(a)(2)(A): Debt Arising by False Pretenses, False Representation or Actual Fraud*

The summary judgment motion filed by the Plaintiff seeks a judgment as a matter of law that determines that the debt owed to it by the Defendant should be excepted from discharge under §523(a)(2)(A) as a debt obtained by a false representation.[78]  11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code provides that:

> a discharge under §727 of this title does not discharge an individual debtor from any debt for money, property, or services, . . . to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Although other circuits have applied a uniform standard to all § 523(a)(2)(A) actions,[79] the Fifth Circuit has distinguished the elements of "actual fraud" from those involving "false pretenses and false representations."[80]  The distinction recognized by the

---

[78]  Dkt. #64 at 17.

[79]  *See, e.g., Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987).  Though some bankruptcy courts outside of the Fifth Circuit have cited the decision of the United States Supreme Court in *Field v. Mans*, 516 U.S. 59 (1995), in support of their proposition that all of the §523(a)(2)(A) actions are governed by the elements for actual fraud, *see, e.g., AT&T Universal Card Services v. Ellingsworth (In re Ellingsworth)*, 212 B.R. 326 (Bankr. W.D. Mo. 1997); *AT& T Universal Card Services v. Alvi (In re Alvi)*, 191 B.R. 724 (Bankr. N.D. Ill. 1996); the Supreme Court in that case was actually distinguishing the language used in §523(a)(2)(A) from that utilized in §523(a)(2)(B) in order to determine the degree of reliance necessary above mere reliance in fact in order to exempt a debt from discharge under (a)(2)(A).  Since the Supreme Court specifically refused to even apply their direct holding regarding the degree of  reliance in actual fraud cases to cases of false pretense or false representation, 516 U.S. at 71, n. 8, the statement that the Court erased all distinctions between the three (a)(2)(A) actions strains credibility.

[80]  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995).

Fifth Circuit appears to be a chronological one, resting upon whether a debtor's

representation is made with reference to a future event, as opposed to a representation

regarding a past or existing fact.[81]   Because the representations allegedly used by the

Defendant to induce the execution of the contract by the Plaintiff pertained to an existing

fact [i.e., the sufficiency of MALP financial resources needed to complete the anticipated

contracts], the Plaintiff's nondischargeability action is properly characterized as one based

upon false representation or false pretenses in this Circuit.   "In order for the court to deny

discharge of a debt under section 523(a)(2)(A) on the basis that the debt was procured by

false pretenses or a false representation,[82] the plaintiff must prove by a preponderance of

the evidence that the debtor made representations that were (1) knowing and fraudulent

---

[81]   *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir.1991) [A debtor's promise
. . . related to a future action which does not purport to depict current or past fact ... therefore cannot be
defined as a false representation or a false pretense].   While "false pretenses" and "false representation"
both involve intentional conduct intended to create and foster a false impression, the distinction is that a
false representation involves an express statement, while a claim of false pretenses may be premised on
misleading conduct without an explicit statement.   *See Walker v. Davis (In re Davis)*, 377 B.R. 827, 834
(Bankr. E.D. Tex. 2007); and *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn.
2003).   In order for a debtor's representation to constitute a false pretense or a false representation, it
"must have been: (1) [a] knowing and fraudulent falsehood, (2) describing past or current facts, (3) that
[was] relied upon by the other party."   *In re Allison*, 960 F.2d at 483; *see also In re Bercier*, 934 F.2d at
692 ["to be a false representation or false pretense under § 523(a)(2), the false representations and false
pretenses must encompass statements that falsely purport to depict current or past facts"].

[82]   A debt may also be declared nondischargeable if it was obtained by actual fraud.  To have a
debt excepted from discharge pursuant to the "actual fraud" provision in § 523(a)(2)(A), an objecting
creditor must prove that (1) the debtor made representations; (2) at the time they were made the debtor
knew they were false; (3) the debtor made the representations with the intention and purpose to deceive
the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained losses
as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir.
1995), *as modified by the United States Supreme Court decision of Field v. Mans*, 516 U.S. 59 (1995)
[regarding the proper standard of reliance].

falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party."[83]

When those elements are applied to the specific jury findings rendered against the Defendant under the state law theories of fraudulent inducement and fraud by non-disclosure, the debt of $258,021.73 as established in the State Court Litigation must be declared nondischargeable under 11 U.S.C. §523(a)(2)(A) as a matter of law.  The jury found that the materially false representations issued by the Defendant regarding the financial stability of MALP and its access to cash were designed to induce the execution of the contracts by the Plaintiff and did, in fact, succeed in doing so, thereby inflicting the $258,021.73 loss upon the Plaintiff.  The entirety of the summary judgment record, including the jury findings that the Defendant perpetrated an actual fraud upon the Plaintiff for his personal benefit,[84] that he engaged in a theft and/or conversion of the Defendant's property,[85] and that he knowingly failed to disclose information which induced the Plaintiff to tender the money,[86] all combine with the jury findings under questions 9[87] and 12[88] to establish as a matter of law that the

---

[83]   *Cardwell v. Gurley,* 2011 WL 6338813, at *6 (E.D. Tex., Dec. 19, 2011) (*citing RecoverEdge,* 44 F.3d at 1293).

[84]   Plaintiff's Ex. 4 at 6.

[85]   *Id*. at 7-8.

[86]   *Id*. at 10-12.

[87]   *Id*. at 9-10.

[88]   *Id*. at 12-13.

Defendant knowingly and fraudulently issued the falsehoods that induced the Plaintiff to act

to its detriment.  The totality of the jury findings leaves no plausible room for doubt in that

regard.[89]

Notwithstanding the apparent fulfillment of each of the required elements for

nondischargeability under §523(a)(2)(A), the Defendant contends that his false oral

representations regarding MALP's financial stability and its access to cash pertain solely

to the financial condition of MALP which places such oral misrepresentations outside the

scope of §523(a)(2)(A).[90]  While such a contention might find traction in other circuits,[91]

the Fifth Circuit has adopted the "strict" view of the operative term "financial condition,"

limiting its scope to a description of "the general overall financial condition of an entity or

individual, that is, the overall value of property and income as compared to debt and

liabilities."[92]  Thus, under this stricter view, particular statements about certain aspects of

---

[89] "Summary judgment on issues of intent may be appropriate . . . where the record of the case leaves no plausible explanation for the debtor's action. . . . [A] court can look at the totality of the circumstances to determine whether a debtor acted with an intent to deceive." *Light v. Whittington (In re Whittington)*, 530 B.R. 360, 383 (Bankr. W.D. Tex. 2014).

[90] *Defendant's Amended Response* at 12.  Again, section 523(a)(2)(A) renders a debt nondischargeable to the extent obtained by false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition.*

[91] Indeed, the Defendant in this context relies solely upon the rationales expressed in *Schneiderman v. Bogdanovich (In re Bogdanovich),* 292 F.3d 104 (2d Cir. 2002) and *Bender v. Tobman (In re Tobman)*, 107 B.R. 20, 24 (S.D.N.Y. 1989).

[92] *Bandi v. Bencel (In re Bandi)*, 683 F. 3d 671, 676 (5th Cir. 2012).  *See also*, *Caldwell v. Joelson (In re Joelson)*, 427 F.3d 700, 714 (10th Cir. 2005).  *Bandi* cites but rejects the broader approach adopted by the Second Circuit in *Bogdanovich.*

one's finances — such as misrepresentations regarding particular assets — do not meet that narrow definition since such a statement "says nothing about the overall financial condition of the person [or business] making the representation or the ability to repay debt."[93]  The same can be properly said for the Defendant's intentionally false representations and/or omissions regarding MALP's general financial stability or the amount of cash which it could access during the proposed contractual period.  A close examination of the Defendant's materially false misstatements regarding the company's general economic stability do not constitute statements which contemplate a comprehensive consideration of all of MALP's assets and liabilities.  More definitively, the Defendant's materially false representations regarding the scope of cash assets held by MALP during the relevant time period are more tightly focused and do not even purport to present a picture of the company's overall financial health.[94]  Thus, such oral misrepresentations are not excluded from the scope of §523(a)(2)(A) as references to the company's financial condition and cannot be fairly characterized as immune from a determination of nondischargeability.  The Plaintiff has therefore demonstrated that there exists no genuine issue of material fact as to each element essential to establish that the

---

[93] *Id.*

[94] Such cash references "could be entirely encumbered, [or its] outstanding undisclosed liabilities . . . could be far more than the value of the [Company]."  *See Bandi,* 683 F.3d at 676.

underlying damage award, and the award of pre-judgment and post-judgment interest,[95] owed to it by the Defendant should be declared nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A). The Court also concludes that the Plaintiff's recovery of the $250.00 required for the filing of the adversary complaint is proper under 28 U.S.C. §1920.

## Conclusion

Accordingly, upon due consideration of the pleadings, the proper summary judgment evidence submitted by the parties, the material facts admitted to exist under Fed. R. Bankr. P. 56 and E.D. TEX. LOCAL R. CV–56(c), the relevant legal authorities and for the reasons set forth herein, the Court concludes that there is no genuine issue as to any material fact and that the debt in the original amount of $258,021.73, plus pre-judgment and post-judgment interest on such sums, owed by the Debtor-Defendant, Randall Lee Haler, to the Plaintiff, Boyington Capital Group, LLC, constituting components of that certain Amended Final Judgment signed on June 9, 2015 by the 429th Judicial District Court of Collin County, Texas in cause no. 429-02144-06, and styled *Boyington Capital*

---

[95] As for the dischargeability of the attorneys' fees awarded in the State Court Judgment, the United States Supreme Court has generally instructed us that "§ 523(a)(2)(A) bars the discharge of all liability arising from fraud." *Cohen v. de la Cruz*, 523 U.S. 213, 222 (1998). Yet in this fraud case, for unexplained reasons, the Plaintiff concedes the dischargeable nature of such fees, *see* Plaintiff's motion at 23, despite the entry of a final, nonappealable amended state court judgment following remand which contained a segregated fee award that went unchallenged by a second appeal. Arguably, the attorney's fees award "arose from" the same fraud that the Defendant is collaterally estopped from disputing. *See, e.g., Miller v. Lewis*, 391 B.R. 380, 384-85 (E.D. Tex. 2008)*; Fire Safe Protection Servs. v. Ayesh (In re Ayesh)*, 465 B.R. 443, 449-52 (Bankr. S.D. Tex. 2011). However, the Plaintiff is bound by the concessions in its pleading and the Court will deem the Plaintiff's claim for nondischargeability of the attorneys' fees award as having been abandoned.

*Group, LLC v. McKinney Aerospace, LP,* is hereby determined to be nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A).[96]  Court costs incurred in this adversary proceeding in the amount of $250.00 are assessed against the Defendant, Randall Lee Haler, in favor of the Plaintiff, Boyington Capital Group, LLC.  An appropriate order and a judgment will be entered which are consistent with this opinion.

Signed on 03/02/2016

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

---

[96] Accordingly, the Court need not reach the issues and arguments presented with respect to the alleged nondischargeability of this debt under §523(a)(4), though the Court notes in passing that the debt could not, as a matter of law, have arisen from the asserted ground of embezzlement since the jury findings establish that the Defendant was never in rightful possession of the Plaintiff's property.