IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



**EOD**

10/19/2018

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **RANDALL LEE HALER** | § | Case No. 10-42052 |
| xxx-xx-3747 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| BOYINGTON CAPITAL GROUP, LLC | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 10-4217 |
| | § | |
| RANDALL LEE HALER | § | |
| | § | |
| Defendant | § | |

## <u>MEMORANDUM OF DECISION[1]</u>

ON THIS DATE the Court considered the Supplemental Motion for Partial

Summary Judgment (the "Motion") filed by the Plaintiff, Boyington Capital Group, LLC

("Plaintiff") in the above referenced adversary proceeding.  The Plaintiff filed its

"Complaint to Determine the Dischargeability of Debtor Randall Lee Haler" on

September 21, 2010,[2] seeking to have the debt owed to it by the Debtor-Defendant,

Randall Haler ("Haler," "Defendant," or "Debtor"), declared nondischargeable under

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] Adversary Case No. 10-4217, dkt. #1.  This proceeding was abated for 49 months in order to allow the parties to secure a final adjudication of their dispute through the state court system.

alternative theories presented by 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6).[3]

Upon reversal by the United States Court of Appeals for the Fifth Circuit of a summary judgment previously entered in this case in the Plaintiff's favor in regard to its § 523(a)(2)(A) claim and with the subsequent remand of the case,[4] this Court entered a *Scheduling Order Following Remand of Case* on March 9, 2018 wherein the Court expressed its intention to proceed to consider alternative grounds presented in the initial motions for summary judgment which were not addressed in the Court's first opinion. However, the Court provided the parties with a schedule for the filing of any supplemental motions for summary judgment by either party, together with any supplementary summary judgment evidence relevant to the remaining grounds. In response to the Court's order, the Plaintiff reurged its prior Motion for Partial Summary Judgment upon its alternative theory that the judgment debt owed to it by the Defendant is nondischargeable under § 523(a)(4) as a debt arising from an embezzlement.

Upon due consideration of the pleadings and the proper summary judgment evidence submitted by the parties, and the relevant legal authorities, the Court concludes that the Plaintiff's Motion as supplemented should be granted and that judgment as a

---

[3] The debt in question became final following the entry of an Amended Final Judgment issued by the 429th Judicial District Court in and for Collin County, Texas on June 9, 2015. *See* Plaintiff's Ex. 9.

[4] Given the length of this dispute between these parties, this Court's unilateral determination to bifurcate the Plaintiff's motion for partial summary judgment was, in hindsight, regrettable.

matter of law should be granted for the Plaintiff and that the indebtedness owed to the

Plaintiff by the Defendant arising from the entry of the Amended Final Judgment in the

state court litigation should be declared nondischargeable as a debt arising from an

embezzlement under § 523(a)(4).[5]

## Factual and Procedural Background[6]

In March 2006, Greg Morse ("Morse") on behalf of the Plaintiff, contacted

McKinney Aerospace, L.P. ("MALP") to inquire whether it was capable of performing

work on the Plaintiff's Hawker BH-125-600A business jet.  Morse communicated and

negotiated with the Debtor-Defendant Haler, who served as the Executive Vice President

of MALP, as well as with Andrew Eros of Aeros Aviation, LLC.  Aeros Aviation served

as the general partner of MALP.  Haler and Eros, individually, were limited partners of

MALP.[7]

After Morse spent significant time with Haler and Eros, the Plaintiff entered into a

series of four contracts whereby MALP would repair and restore the Plaintiff's jet.  Each

---

[5] This Court has authority to enter final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

[6] The facts presented are those the Court believes to be uncontested between the parties or are imposed by applicable provisions of claim preclusion.  They are presented only as a general factual background to the legal claims asserted in the case.  This section is not intended to resolve any disputed or contested facts.

[7] Haler testified at trial that Aeros Aviation was the general partner of MALP and owned one percent of the company, he was a limited partner and owned 49.5% of MALP, and Eros owned the remaining 49.5% of the company and was "the majority of the company vote."  Defendant's Ex. 3 at 11-13.

contract dealt with a specific portion of the aircraft : (1) an engine renovation contract;[8] (2) an interior refurbishment contract;[9] (3) a new Terrain Awareness and Warning System (TAWS);[10] and (4) a new Reduced Vertical Separation Minimum (RVSM) system.[11] Each contract was executed by Dean Murray, Vice-President of Sales, on behalf of MALP and by Morse on behalf of the Plaintiff.[12] Contracts 1 and 4 required the Plaintiff to deposit 50% of the original quoted total upon the signing of the contract.[13]  Contracts 2 and 3 required 100% payment by the Plaintiff upon signing.[14]  Each contract contained the following requirement with regard to the initiation of work:

> 1.  Material purchases, vendor service requests, engineering work and labor will not begin until the agreed-upon deposit has been received by McKinney Aerospace.  Further, the project will be stopped and/or delayed if the Customer does not remit a progress payment on or before the required due date.[15]

In early April 2006, the Plaintiff tendered its first payment of $337,205 to

---

[8]  Plaintiff's Ex. 5 (Part 2) [Trial Court Exhibits] at 25-29.  The Court's page references to the exhibits are produced from its CM-ECF system and appear at the top of each page.

[9]  *Id*. at 1-14.

[10]  *Id*. at 15-19.

[11]  *Id*. at 20-24.

[12]  *Id*. at 5, 19, 24 and 29.  Morse executed each contract on March 31, 2006.

[13]  *Id*. at 3 and 27.

[14]  *Id*. at 17 and 22.

[15]  *Id*. at 3, 17, 22 and 27.

MALP.[16]  However, unbeknownst to the Plaintiff, rather than retaining the substantial

deposit to finance the purchase of equipment and other needs pertaining to the repair of

the Plaintiff's aircraft, the sums were immediately utilized to satisfy other financial

obligations of MALP.[17]  Two months later, the parties agreed upon a subsequent change

order to the repair directives and the Plaintiff tendered an additional $60,000 to MALP on

the morning of June 6, 2006.[18]  Later the same day, however, amidst growing concerns

regarding MALP's actions with regard to the aircraft, the Plaintiff reversed course and

sent a letter to MALP, instructing it to forego any further work on the jet and requesting a

"refund [of] all monies paid but not yet spent, including all avionics and hardware

purchased but not yet installed."[19]  Yet the Plaintiff was informed that the check had been

immediately cashed and that MALP had already spent the money on other obligations.[20]

At no time, however, did MALP actually refund any amount of money to the Plaintiff.

       Having not received any refund, the Plaintiff sued MALP, Haler, Aeros Aviation,

Eros, and other parties in the 429th Judicial District Court of Collin County, Texas on

---

[16]  The combined quotes for the four contracts totaled $476,550.

[17]  Plaintiff's Ex. 5 (Part 2) [Trial Court Exhibits] at 31-33.

[18]  The Texas Court of Appeals noted in its opinion that "there was no evidence that any of the $60,000 was spent on Boyington's plane."  *Haler v. Boyington Capital Group, Inc. (sic)*, 411 S.W.3d 631, 636 (Tex.App. – Dallas 2013, pet. denied).

[19]  *Id.* at 38.

[20]  *Id.* at 35-37.

July 6, 2006 (the "State Court Litigation").[21]  Soon after, MALP shut down its operations and began a self-directed liquidation.  The state district court subsequently appointed a receiver for MALP on September 20, 2006, and the receiver reported that MALP had previously terminated its employees at the end of July 2006, and had sold its operating equipment before August 15, 2006.[22]

The State Court Litigation was subsequently tried to a jury and the jury issued factual findings pursuant to the charge in favor of the Plaintiff.[23]  With reference to the § 523(a)(4) issue of embezzlement currently raised by the Plaintiff's supplemental motion, the relevant jury findings are as follows:

**QUESTION 4:**

In answering the following questions, consider whether Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC used McKinney Aerospace, L.P. for the purpose of perpetuating and did perpetuate an actual fraud on Boyington Capital Group, LLC primarily for the direct personal benefit of Randall Haler, Andrew Eros, McKinney Aerospace, LP and/or Aeros Aviation, LLC.

Answer "Yes" or "No."

| | |
|---|---|
| Randall Haler | yes |
| Andrew Eros | yes |
| McKinney Aerospace, L.P. | yes |
| Aeros Aviation, LLC | yes[24] |

---

[21]  Plaintiff's Ex. 1 and 2. The state court case is listed as cause no. 429-02144-06, styled *Boyington Capital Group, LLC v. McKinney Aerospace, LP, et al.*

[22]  Plaintiff's Ex. 6 at 5.

[23]  Plaintiff's Ex. 4.

[24]  *Id*. at 6.

**QUESTION 7**:

Do you find from a preponderance of the evidence that Randall Haler and/or Andrew Eros and/or McKinney Aerospace, L.P. and/or Aeros Aviation, LLC committed the offense of theft of property from Boyington Capital Group, LLC?

"Theft" is defined as follows:

The unlawful appropriation of property with intent to deprive the owner of same without the consent of the owner's effective consent (sic).

"Deprive" means to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner.

"Effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by deception or coercion.

"Appropriate" means to acquire or otherwise exercise control over property other than real property.

"Property" means a document, including money, that represents or embodies anything of value.

Answer "Yes" or "No."

| | |
|---|---|
| Randall Haler | yes |
| Andrew Eros | yes |
| McKinney Aerospace, L.P. | yes |
| Aeros Aviation, LLC | yes |

If you answered the question above "Yes," as to Randall Haler, then answer the following question. If you answered the question above "No," as to Randall Haler, do not answer the following and move to Question 8.

Please state in dollars and cents the damages, if any, sustained by Boyington Capital Group, LLC as [a] result of the conduct described in Question 7.

Answer: $258,021.73.[25]

---

[25] *Id.* at 7-8.

After the rendition of the jury verdict in the State Court Litigation but before a judgment could be rendered thereon, Haler filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court on June 24, 2010.[26]  The Plaintiff, Boyington Capital Group, LLC, timely filed this adversary proceeding on September 21, 2010, and upon its motion, this Court modified the discharge injunction permitting the parties to complete the State Court Litigation, including the entry of a final judgment and any appeal therefrom.[27]  The state district court signed a final judgment on December 6, 2011.[28]  Haler appealed.

On August 15, 2013, the Texas Court of Appeals for the Fifth District of Texas at Dallas issued an opinion under which much of the relief granted to the Plaintiff by the district court's final judgment, including Haler's liability under the Texas Theft Liability Act,[29] was affirmed.[30]  Haler filed a petition for review with the Supreme Court of Texas

---

[26]  Case no. 10-42052, dkt. #1.

[27]  Dkt. #35.

[28]  Plaintiff's Ex. 1 at 22.

[29]  "The Texas Theft Liability Act ("TTLA") provides a civil cause of action for damages against a party who commits theft by any method defined under the Texas Penal Code." *TXCO Resources, Inc. v. Peregrine Petroleum, LLC (In re TXCO Resources, Inc.)* 475 B.R. 781, 833 (Bankr. W.D. Tex. 2012).  6 TEX. PRAC. & REM. CODE ANN. §134.001, et seq. (West 2011).  Theft is defined as "unlawfully appropriating property or unlawfully obtaining services as described by sections 31.03–31.07, or 31.11–31.14 of the Texas Penal Code." 6 TEX. PRAC. & REM. CODE ANN. §134.002(a) (West Supp. 2017).  Section 31.03(a) of the Texas Penal Code provides that a person "commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." 4 TEX. PENAL CODE ANN. §31.03(a) (West Supp. 2017).  To recover for a civil theft under the TTLA, a plaintiff must establish: (1) the

on November 14, 2013, which was subsequently denied on January 17, 2014.[31]  The

Court of Appeals issued its mandate on February 28, 2014.[32]  Upon remand and

reconsideration of the attorneys' fees issue as directed by the appellate court, the state

district court signed an Amended Final Judgment on June 9, 2015, under which the

Defendant was determined to be liable to the Plaintiff in the principal sum of

$258,021.73, plus pre-judgment and post-judgment interest and an award of attorney's

fees.[33]

    After the amended state court judgment became final and nonappealable,[34] this

Court dissolved its abatement on August 20, 2015.[35]  As previously noted, upon reversal

of the summary judgment granted to the Plaintiff under its § 523(a)(2)(A) claim, the

parties have now reurged their respective positions and have submitted supplemental

---

plaintiff had a possessory right to property; (2) the defendant unlawfully appropriated property in violation of the theft provisions of the Texas Penal Code; and (3) the plaintiff sustained damages as a result of the theft.  *Wellogix, Inc. v. Accenture, LLP*, 788 F.Supp.2d 523, 542 (S.D. Tex. 2011).

[30]  *See Haler v. Boyington Capital Group, Inc. (sic)*, 411 S.W.3d 631 (Tex. App.–Dallas 2013, pet. denied).  The appellate court reversed and remanded only for a proper allocation and reconsideration of the award of attorneys' fees.  *See* Plaintiff's Ex. 6.

[31]  Plaintiff's Ex. 7.

[32]  Plaintiff's Ex. 8.

[33]  Plaintiff's Ex. 9.

[34]  See status report filed by the Plaintiff on July 10, 2015.  Dkt. #57.

[35]  Dkt. #58.

materials for consideration in conjunction with the Plaintiff's request for summary judgment on its § 523(a)(4) claim based upon the application of the principles of collateral estoppel.

## Discussion

*Standards for Summary Judgment*

The Plaintiff brings its Motion for Partial Summary Judgment as Supplemented in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion.[36] As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[37]

The operation of the summary judgment standard depends upon which party will bear the

---

[36] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[37] FED. R. CIV. P. 56(c).

burden of persuasion at trial. "If the moving party bears the burden of persuasion at trial, it must also support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial."[38]

If the motion is supported by a *prima facie* showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.[39] "A fact is material only if its resolution would affect the outcome of the action . . . ."[40] In so demonstrating, the non-movant must show more than a "mere disagreement" between the parties,[41] or that there is merely "some metaphysical doubt as to the material facts."[42] Neither are unsubstantiated, conclusory assertions in the response sufficient to raise a genuine issue of material fact.[43]

---

[38] *Sell v. Universal Surveillance Sys., LLC*, 2017 WL 3712188, at *3 (W.D. Tex. July 6, 2017) (citing *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting)).

[39] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010).

[40] *Wiley v. State Farm Fire & Cas. Co.,* 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

[41] *Calpetco 1981 v. Marshall Exploration, Inc*., 989 F.2d 1408, 1413 (5th Cir. 1993).

[42] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[43] *McCarty v. Hillstone Rest. Group, Inc*., 864 F.3d 354, 357 (5th Cir. 2017).

However, "[t]he issue of material fact which must be present in order to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[44]

The record presented is reviewed in the light most favorable to the non-moving party.[45] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"[46] Further, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[47] Essentially, if a non-movant fails to set forth specific facts that present a triable issue on any relevant issues, his claims should not survive summary judgment.[48]

In this case, the Plaintiff bears the ultimate burden as to the nondischargeability of the debt. Thus, the Plaintiff is entitled to a summary judgment only if there exists no

---

[44] *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)).

[45] *Matsushita,* 475 U.S. at 587.

[46] *Id.*

[47] *Anderson,* 477 U.S. at 248.

[48] *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 494 (5th Cir. 2001).

genuine issue of material fact as to each essential element under the relevant subsection of

§ 523(a)(4).  The motion for summary judgment under consideration herein seeks to meet

that burden through the application of the principles of issue preclusion (collateral

estoppel).  The Plaintiff claims that the facts surrounding the Defendant's theft of

property as established during the state court litigation before the 429th Judicial District

Court in and for Collin County, Texas, and as affirmed by the Texas Court of Appeals,

form the basis for a determination that the underlying judgment debt is excepted from

discharge in the Defendant's Chapter 7 bankruptcy case.  Resolving this question requires

that the Court first determine the applicability of the doctrine itself.  If collateral estoppel

applies, any relevant factual findings (i.e., related to the required elements for

nondischargeability) regarding the actions of the Defendant in this common set of

operative facts upon which the state court judgment is based cannot properly be disturbed

here.  The Court applies those findings to the required elements for nondischargeability to

ascertain which factual issues, if any, remain.   If collateral estoppel does not apply, the

Plaintiff's motion must be wholly denied.

*Standards for Issue Preclusion (Collateral Estoppel).*

"Collateral Estoppel, or, in modern usage, issue preclusion, 'means simply that

when an issue of ultimate fact has once been determined by a valid and final judgment,

**-13-**

that issue cannot again be litigated between the same parties in any future lawsuit.'"[49]  In

other words, "once an issue is actually and necessarily determined by a court of

competent jurisdiction, that determination is conclusive in subsequent suits based on a

different cause of action involving a party to the prior litigation."[50]  "To preclude parties

from contesting matters that they have had a full and fair opportunity to litigate protects

their adversaries from the expense and vexation attending multiple lawsuits, conserves

judicial resources, and fosters reliance on judicial action by minimizing the possibility of

inconsistent decisions."[51]

In the bankruptcy dischargeability context, "parties may invoke collateral estoppel

in certain circumstances to bar relitigation of issues relevant to dischargeability" and

satisfy the elements thereof.[52]  In other words, when an issue that forms the basis for the

creditor's theory of nondischargeability has been actually litigated in a prior proceeding,

neither the creditor nor the debtor may relitigate those grounds.[53]  While the doctrine of

---

[49] *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (internal quotations omitted).

[50] *Montana v. U.S.*, 440 U.S. 147, 153 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)).

[51] *Id*. at 153–54.

[52] *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (quotation marks omitted).

[53] *RecoverEdge, L.P. v. Pentecost*, 44 F.3d 1284, 1294 (5th Cir. 1995).

issue preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable.[54]

The inquiry into the preclusive effect of a state court judgment is guided, indeed mandated, by the full faith and credit statute, which states that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."[55] Thus, federal courts look to the principles of issue preclusion utilized by the forum state in which the prior judgment was entered.[56] Because the judgment against the Defendant was entered in a Texas state court, this Court applies the Texas law of issue preclusion.[57]

Collateral estoppel under Texas law prevents the relitigation of identical issues of law or fact that were actually litigated and were essential to the final judgment in a prior suit.[58] "The doctrine applies when the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit."[59] Specifically, a party

---

[54] *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

[55] 28 U.S.C. § 1738 (1994).

[56] *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997).

[57] *Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996).

[58] *Texas Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001).

[59] *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1991) (citing *Tarter v. Metropolitan Sav. & Loan Ass'n*, 744 S.W. 926, 927 (Tex. 1988)).

is collaterally estopped from raising an issue under Texas law when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case.[60]  Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties.[61]

In the context of issue preclusion, "issue" and "fact" are interchangeable.  The purpose of the reviewing court is to determine the specific facts brought that were already established through full and fair litigation.  In this circuit, issue preclusion will prevent a bankruptcy court from determining dischargeability issues for itself only if "the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question  . . .  and the facts supporting the court's findings are discernible from that court's record."[62]  As the party asserting the preclusive effect of the findings arising from the state court litigation, the Plaintiff has the burden of proof on all elements of collateral estoppel.

---

[60] *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984); *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 817 (Tex. App.—Dallas 2012, no pet.).

[61] *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985).

[62] *Fielder v. King (Matter of King)*, 103 F.3d 17, 19 (5th Cir. 1997)(*citing Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 278 (5th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 1081 (1995)).

Addressing the relevant factors in reverse order, the parties do not dispute that they were adversaries in the state court litigation.  Indeed, this Court modified the discharge injunction in order to allow these parties to proceed in state court.[63]  The summary judgment record further evidences that the factual determinations tendered in the State Court Litigation were essential to the entry of the Amended Final Judgment against the Defendant in that state court proceeding and a certain number of those are germane to the determination of the nondischargeable nature of that judgment debt under 11 U.S.C. § 523(a)(4).  The Amended Final Judgment, and the jury findings upon which it is based, establish several facts which undergird the liability of the Defendant to the Plaintiff under various causes of action.  Such facts arose from an actual evidentiary trial and the Defendant acknowledges that he participated in each stage of the state court proceeding and that a final judgment was entered against him in favor of the Plaintiff which was affirmed on appeal.   As a result, the facts established in the State Court Litigation were fully and fairly litigated by the parties in the state court system.  Thus, all three requirements for the application of collateral estoppel under Texas law are established in this case and the Defendant is thereby estopped from relitigating those determinations that

---

[63]  Dkt. #35.

necessarily support the Amended Final Judgment.[64]

In this case, the summary judgment record firmly establishes that the Defendant was found in the State Court Litigation to have engaged in a fraudulent theft of the Plaintiff's property.[65] The jury made the following specific factual findings regarding the Defendant's misconduct:

    (a)    Haler engaged in the unlawful appropriation of the Plaintiff's property;

---

[64] Collateral estoppel applies in this instance and is binding upon the Defendant and this Court, notwithstanding any error of law that might have occurred in the State Court Litigation.  Such an error would not render the State Court Judgment void, but merely voidable.  As the Fifth Circuit has observed in applying Texas law:

> A void judgment is subject to both direct and collateral attack, while a judgment that is merely voidable must be corrected through ordinary appellate or other direct procedures. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985).  A judgment is void only when it is shown that the court had no jurisdiction over the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or lacked capacity to act as a court.  *Id.*; *Cook v Cameron*, 733 S.W.2d 137, 139 (Tex. 1987).  All errors other than jurisdictional defects must render the judgment voidable rather than void and must be corrected on direct appeal.  *Browning,* 698 S.W.2d at 363.
> . . .
> Absent one of those rare circumstances that makes a judgment 'void,' the mere fact that an action by a court of appeals is contrary to a statute, constitutional provision or rule of civil or appellate procedure makes it 'voidable' or erroneous.  *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990). . . .

*Gober,* 100 F.3d at 1202-03.  Accordingly, since the issue of whether a civil liability for theft has been properly established under the Texas Theft Liability Act is not within this Court's exclusive jurisdiction, the State Court Judgment is entitled to full faith and credit, is immune from collateral attack in this Court, and the principles of collateral estoppel apply in the determination of the dischargeability of the judgment debt.

[65] This conclusion supersedes this Court's earlier statement constituting *obiter dicta* contained in footnote 96 of its § 523(a)(2)(A) memorandum regarding the Defendant's possession of the Plaintiff's property.  Such a flawed observation made "in passing" is contradicted by a more thorough review of the record as to the issue of control by the Defendant.

(b)     Haler appropriated the Plaintiff's property with an intent to deprive the
        Plaintiff of it;

(c)     Haler intended to withhold the Plaintiff's property permanently or for such
        an extended period of time that a major portion of the value or enjoyment of
        that property was lost to the Plaintiff;

(d)     Haler appropriated the Plaintiff's property without the Plaintiff's consent;

(e)     Haler perpetrated an actual fraud on the Plaintiff;

(f)     Haler perpetrated the fraud on the Plaintiff for his direct personal benefit;

(g)     Haler committed the offense of theft of property.

Further, the following facts are necessarily implied in the summary judgment record:

(h)     The Plaintiff had a property interest in the funds tendered to MALP for the
        repair and renovation of its aircraft; and

(i)     Haler had a sufficient degree of control over the Plaintiff's property to have
        engaged in an unlawful appropriation of Plaintiff's property.

        In each instance, Haler is now precluded from relitigating those established facts

under the principles of collateral estoppel and such resolved factual determinations are

germane to the Plaintiff's § 523(a)(4) claim.  Though Haler still asserts that he was never

in rightful possession of the Plaintiff's property, the principles of collateral estoppel

preclude the Defendant from relitigating the jury's express finding that, notwithstanding

his organizational position, Haler possessed a sufficient degree of control to have

perpetrated an unlawful appropriation of the Plaintiff's property.  Indeed, Haler expressly

presented this precise challenge to the Texas Court of Appeals and it was rejected:

> Haler argues that because the jury found that he did not participate in
> control of McKinney Aerospace, he could not have exercised control over
> McKinney Aerospace's failure to refund any funds due to Boyington and,
> therefore, we must reverse the jury's finding that he violated the TTLA. We
> disagree.  The jury heard evidence that McKinney Aerospace's Chief
> Financial Officer reported to Haler; Haler told Morse that he "controlled the
> money;" Haler knew the $60,000 had been spent on the same day it was
> received; and Haler created a chart for Boyington showing the value of the
> contracts, the money deposited on each contract, and that available cash for
> the airplane repair — 258,021.73.  From this evidence, the jury could have
> concluded that Haler did not control McKinney Aerospace, but that he did
> exercise enough control over McKinney Aerospace's finances to unlawfully
> appropriate Boyington's money.[66]

Further, Haler is precluded from relitigating that he gained no personal use or

benefit from his unlawful appropriation of the Plaintiff's property.  The jury expressly

found that he gained a direct personal benefit from his misconduct toward the Plaintiff.[67]

Further, the fact that the Defendant did not personally enrich himself through his

diversion of the Plaintiff's property is of no consequence.[68]

---

[66] *Haler*, 411 S.W.3d at 636.

[67] Plaintiff's Ex. 4 at 6.

[68] *See Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1173 (6th Cir. 1996) [concluding that
when a debtor disregarded a creditor's wishes regarding the proper dispersal of funds and instead utilized

Finally, Haler is precluded from relitigating that his actions with regard to his unlawful appropriation of the Plaintiff's property was performed with a fraudulent intent. Again, the jury expressly determined that Haler unlawfully appropriated the Plaintiff's property with an actual intent to deprive the Plaintiff of that property and that Haler's actions perpetuated an actual fraud upon the Plaintiff for his direct personal benefit. Those factual findings were challenged and upheld on appeal.  Yet Haler asserts that any preclusive effect which might otherwise apply to these findings of fraudulent intent should be denied because such findings are tainted and cannot be utilized against him in light of the Fifth Circuit's ruling regarding the viability of the Plaintiff's § 523(a)(2)(A) claim based upon the financial condition of MALP.  In the Defendant's words, the Plaintiff's supplemental motion is an attempt "to circumvent the exception found in § 523(a)(2)(A) by applying [a] false representation to another section of § 523(a)."[69]

In addition to the fact that the cases upon which the Defendant relies for this proposition are not binding on this Court,[70] the mutual exclusivity principle expressed in

---

the money to improve the finances of a corporation he controlled, the debtor fraudulently appropriated the money for his own use that constituted an embezzlement under § 523(a)(4) despite the fact that the debtor did not deposit the money into his personal bank account].

[69]  Dkt. #96 at 12-13.

[70]  *Schneiderman v. Bogdanovich (In re Bogdanovich),* 292 F.3d 104 (2d Cir. 2002) and *Bender v. Tobman (In re Tobman)*, 107 B.R. 20, 24 (S.D.N.Y. 1989).

those cases has been generally rejected in this circuit.[71]  Additionally, even those courts

which currently endorse the exclusivity principle regarding oral statements of financial

condition apply it only when such oral statements are the *only* evidence of wrongdoing.[72]

That is not the scenario presented by this summary judgment record.

The jury's factual findings regarding the Defendant's fraudulent conduct under

jury question #4 and its separate findings which establish the Defendant's TTLA liability

under jury question #7 (and under which damages were independently assessed against

the Defendant) are separate and distinct from the specific jury findings regarding the

existence of fraudulent inducement or fraud arising from non-disclosure by the Defendant

which track the § 523(a)(2)(A) elements.  Further, this summary judgment record

establishes the existence of additional wrongful acts by the Defendant other than those

---

[71] *Horton v. Robinson (In re Horton)*, 85 F.3d 625 n.10 (5th Cir. 1996) (citing *Ferris v. Stokes (Matter of Stokes)*, 995 F.2d 76, 77 (5th Cir. 1993)) ["As we held in *In re Stokes*, 995 F.2d 76, 77 (5th Cir.1993), the same conduct can give rise to causes of action under multiple sections."]; see also *Smith v. F.D.I.C. (In re Smith)*, 39 F.3d 320 n.6 (5th Cir. 1994).

[72] *See, e.g., McCrary v. Barrick (In re Barrick),* 217 B.R. 598, 605-06 (B.A.P. 9th Cir. 1990) [applying the principles only under circumstances in which the specific elements of § 523(a)(2)(A) "will be *required* to be proven in order to establish liability for a willful and malicious injury under § 523(a)(6)] (emphasis added); *Weiss v Alicea (In re Alicea),* 230 B.R. 492 (Bankr. S.D.N.Y. 1999) ["A creditor armed <u>only</u> with an oral statement of financial condition should not be able to circumvent these protections by charging that same conduct produced a willful and malicious injury."].  *Id*. at 508 (emphasis added).  The Second Circuit in *Bogdanovich* cites *Barrick* for its general proposition, but tacitly acknowledges that the application of the exclusivity principle requires a case-by-case approach and it ultimately decides that "it is inappropriate to resolve at this juncture what relationship exists between § 523(a)(2) and (a)(6)."  *Bogdanovich*, 202 F.3d at 115.

which impact the § 523(a)(2)(A) elements.  The record establishes that the money

tendered by the Plaintiff was subject to Haler's subsequent control as an unearned deposit

toward the repairs which MALP was obligated to effectuate for the Plaintiff's benefit.  It

conclusively establishes that the Defendant failed to refund any sums due and owing to

the Plaintiff.  It conclusively determines that, regardless of what initially induced the

Plaintiff to tender its money, the Defendant was legally responsible for the return of the

Plaintiff's deposits and that the subsequent and unauthorized diversion of such tendered

funds deprived the Plaintiff of its property without its consent and constituted an unlawful

appropriation under Texas law.  There is no uncertainty or taint regarding the facts

established by the jury's findings regarding the civil theft perpetrated by the Defendant.

While it is true that the jury identified a myriad of improper actions taken by the

Defendant, the fact that some of those findings regarding the Defendant's misconduct

cannot be independently utilized to render a debt nondischargeable under § 523(a)(2)

because they were not in writing does not cleanse the Defendant's misconduct for all

purposes under every subsection of § 523(a), including § 523(a)(4).

        However, notwithstanding the proper application of collateral estoppel principles,

the question remains as to whether the findings referenced or necessarily implied by the

entry of the Amended Final Judgment are sufficient to render that judgment debt

nondischargeable as a matter of law as a debt arising from embezzlement under

§ 523(a)(4).

*Nondischargeability Under §523(a)(4): Debt Arising from Embezzlement.*

The Plaintiff asserts that the debt owed to it by Haler should be excepted from

discharge under 11 U.S.C. §523(a)(4) as a debt arising from embezzlement.[73]  The Fifth

Circuit has noted generically "that this discharge exception was intended to reach those

debts incurred through abuses of fiduciary positions and through active misconduct

whereby a debtor has deprived others of their property by criminal acts; both classes of

conduct involve debts arising from the debtor's acquisition or use of property that is not

the debtor's."[74]

"Embezzlement is defined for the purposes of §523(a)(4) as the fraudulent

appropriation of property by a person to whom such property has been entrusted, or into

---

[73]  11 U.S.C. §523(a)(4) states that:

    (a) A discharge under Section 727 . . . of this title does not discharge an individual debtor
           from any debt . . .
                    (4) for fraud or defalcation while acting in a fiduciary
                          capacity,  embezzlement, or larceny.

[74]  *Miller v. J.D. Abrams Inc. (Matter of Miller),* 156 F.3d 598, 602 (5th Cir.1998), *cert. denied*,
526 U.S. 1016 (1999) (internal quotations omitted).

whose hands it has lawfully come."[75]  "Embezzlement, however, is not limited to situations in which one person is entrusted with the property of another.  It also applies where . . . a person lawfully obtains property, but then fraudulently appropriates it for his or her own use."[76]  "Given that a debtor has lawful control of the property, embezzlement then requires three elements: (1) appropriation of funds [or property] by the debtor; (2) for the debtor's use or benefit; and (3) with fraudulent intent."[77]  For the purposes of the embezzlement exception to discharge, a fraudulent intent is "an intent to deceive another person and thereby induce such other person to transfer, alter or terminate a right with respect to property."[78]

The factual findings which bind the parties and this Court through the application of the principles of collateral estoppel are sufficient to render the indebtedness owed by the Defendant to the Plaintiff pursuant to the Amended Final Judgment nondischargeable

---

[75]  *Id.*  "Both larceny and embezzlement involve the fraudulent appropriation of property; they differ only in timing.  Larceny applies when a debtor unlawfully appropriates property at the outset, whereas embezzlement applies when a debtor unlawfully appropriates property after it has been entrusted to the Debtor's care."  *Rainey v. Davenport (In re Davenport),* 353 B.R. 150, 199 (Bankr. S.D. Tex. 2006).

[76]  *Powers v. Caremark, Inc. (In re Powers)*, 261 F. App'x. 719, 723 (5th Cir. 2008).

[77]  *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 696 (Bankr. E.D. Tex. 2009) (citing *Davenport,*  353 B.R. at 200).

[78]  *Winn v. Holdaway (In re Holdaway)*, 388 B.R. 767, 778 (Bankr. S.D. Tex. 2008).

as a matter of law under § 523(a)(4).  The Defendant was provided control of the

Plaintiff's property.  He then engaged in the unlawful appropriation of that property with

an intent to deprive the Plaintiff of it.  The jury expressly found that, as to his conduct

with Boyington Capital Group, LLC, this individual debtor acted purposefully in

perpetrating an actual fraud for his direct personal benefit.  That specific finding of intent

is not the product of any specific factual finding regarding fraudulent inducement or fraud

by non-disclosure, but rather serves as an overall preface to the particularized factual

inquiries which followed.  The jury was specifically directed to determine, "in answering

the following questions," the nature of the Defendant's intentions toward the Plaintiff in

the various interactions between the parties.  The jury determined that the Defendant's

conduct was intentional and fraudulent. The jury then proceeded to determine that the

Defendant had engaged in specific conduct that tracked the criminal definition of theft

under Texas law as the prerequisite to assessing civil liability against the Defendant for

his intentional misconduct under the Texas Theft Liability Act.  As was confirmed by the

Texas Court of Appeals, that factual finding of theft was independently grounded in the

Defendant's failure to refund the unearned deposits of the Plaintiff in addition to any

action taken by the Defendant in his acquisition of the sums.[79]

---

[79] *Haler,* 411 S.W.3d at 636-37.

## Conclusion

This Defendant has enjoyed a full and complete opportunity to litigate the factual allegations asserted against him regarding his wrongful appropriation of the Plaintiff's property, including the full opportunity for appellate review afforded under Texas law.  It has been fully and finally determined through a contentious litigation process that the Defendant engaged in active misconduct whereby he deprived this Plaintiff of its property by actions sufficient to constitute theft under the Texas Penal Code and to warrant the assessment of civil liability under the Texas Theft Liability Act.[80]  That factual determination fully subsumes the federal common law definition of embezzlement.  To adapt the Fifth Circuit's characterization of § 523(a)(4) from its original larceny context into an embezzlement analysis,

> Section 523(a)(4) excepts from discharge debts "for . . . embezzlement."
> The text adds no further criteria or qualifications.  Like § 523(a)(2), a plain
> reading of the provision is that a debtor cannot discharge a debt that arises
> from embezzlement so long as the debtor is liable to the creditor for the
> embezzlement.  It is the character of the debt rather than the character of the
> debtor that determines whether the debt is nondischargeable under
> § 523(a)(4).[81]

---

[80] "The discharge exception [under § 523(a)(4)] was intended to reach those debts incurred  . . . through active misconduct whereby a debtor has deprived others of their property by criminal acts  . . . [involving] debts arising from the debtor's acquisition or use of property that is not the debtor's." *Powers*, 261 F. App'x at 723 (citing *Boyle v. Abilene Lumber, Inc. (In re Boyle)*, 89 F.2d 583, 588 (5th Cir. 1987)).

[81] *Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*, 864 F.3d 344, 351 (5th Cir. 2017) (as modified with citations omitted).

Accordingly, upon due consideration of the pleadings, the proper summary

judgment evidence submitted by the parties, including those material facts which are

binding upon the parties pursuant to the principles of issue preclusion, the relevant legal

authorities and for the reasons set forth herein, the Court concludes that there is no

genuine issue as to any material fact and that the debt in the original amount of

$258,021.73, together with the award of attorney's fees, plus pre-judgment and post-

judgment interest on such sums,[82] owed by the Debtor-Defendant, Randall Lee Haler, to

the Plaintiff, Boyington Capital Group, LLC, constituting components of the Amended

Final Judgment signed on June 9, 2015 by the 429th Judicial District Court of Collin

County, Texas in cause no. 429-02144-06, and styled *Boyington Capital Group, LLC v.*

*McKinney Aerospace, LP,* is hereby determined to be nondischargeable pursuant to 11

U.S.C. §523(a)(4).  Court costs incurred in this adversary proceeding in the amount of

$250.00 are assessed against the Defendant, Randall Lee Haler, in favor of the Plaintiff,

---

[82]  "[T]he status of ancillary obligations such as attorney's fees and interest depends on that of the primary debt.  When the primary debt is nondischargeable . . ., the attorney's fees and interest accompanying compensatory damages, including post-judgment interest, are likewise nondischargeable." *Gober,* 100 F.3d at 1208.  That jurisprudence is based upon the instruction of the United States Supreme Court that §523(a) should be properly construed to bar the discharge of all liability arising from the categories of misconduct that render a debt nondischargeable, thereby insuring "that the creditors' interest in recovering full payment of debts in these categories outweigh[s] the debtors' interest in a complete fresh start." *Cohen v. de la Cruz,* 523 U.S. 213, 222 (1998).

Boyington Capital Group, LLC.[83]  An appropriate order and a judgment will be entered

which are consistent with this opinion.


Signed on 10/19/2018

_____
THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[83]  28 U.S.C. § 1920.